## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
**Case No.: _____**

| | |
|---|---|
| Marquitta R. Randle | |
| **Plaintiff,** | **COMPLAINT** |
| vs. | |
| Consumer Portfolio Services Inc., Patrick K. Willis Company Inc. *d/b/a* American Recovery Service, and Northland Recovery Bureau Inc., | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

1.    Plaintiff Marquitta R. Randle brings this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"); Article 9 of the Minnesota Uniform Commercial Code ("UCC"); and Minnesota Common Law.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1367.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendants transact substantial business in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

## PARTIES

3.    Plaintiff is a natural person, and citizen of the State of Minnesota.

4.      Defendant Consumer Portfolio Services Inc. ("CPS") is a California corporation with its principal place of business located 3800 Howard Hughes Pkwy, Suite 1400, Las Vegas, NV 89169.  CPS is registered to do business in Minnesota under the assumed name NewRoadsAutoLoans.  CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of CPS at 1010 Dale Street North, St. Paul, MN 55117.

5.      Defendant Patrick K. Willis Company, Inc. *d/b/a* American Recovery Service ("American Recovery") is a California corporation with its principal place of business located at 3401 Fitzgerald Rd., Rancho Cordova, CA, 95742. Joel Levy is the registered agent authorized to accept service at 2150 River Plaza Drive, Suite 450, Sacramento, CA 95833.

6.      American Recovery is licensed as a Repossession Agency in California, license number 717.

7.      Every two minutes American Recovery repossesses a vehicle.

8.      American Recovery has repossessed 470,000 units through License Plate Recognition ("LPR") technology.

9.      American Recovery is the most trusted asset recovery management solution on the market.

10.     American Recovery is the Original Nationwide Repossession Service and contracts with nearly 800 recovery agents across the nation.

11.     American Recovery offers repossession management services to financial institutions across the nation – *also known as repossession "forwarding".*

12. American Recovery is engaged in a business, the principal purpose of which is the enforcement of security interests.

13. American Recovery regularly enforces or attempts to enforce security interests for other parties.

14. Defendant Northland Recovery Bureau, Inc. ("NRB") is a Minnesota corporation with its principal place of business and its registered office located at 1800 Highway 13 West, Burnsville, MN 55337.

15. NRB is a full-service collateral recovery company.

16. According to its website, NRB is: (a) a Certified Recovery Agent; (b) a member of Allied Finance Adjusters; (c) a Certified Asset Recovery Specialist; (d) a member of the Recovery Specialist Insurance Group; and (e) inspected by the Recovery Industry Services Company.

17. NRB is engaged in a business, the principal purpose of which is the enforcement of security interests.

18. NRB regularly enforces or attempts to enforce security interests for other parties.

19. American Recovery and NRB regularly use the mail, roads, and telephone in connection with the enforcement of security interests by operating tow truck vehicles, transporting repossessed vehicles, engaging in telephone conversations with consumers and creditors, and mailing correspondence, invoices, statements, and notices.

20. Federal court records indicate that American Recovery and NRB have been sued on multiple occasions under the FDCPA.

21.     For purposes of 15 U.S.C. § 1692f(6), American Recovery and NRB are "debt collectors" as defined in the FDCPA.

22.     American Recovery were and NRB acting as debt collectors with respect to Plaintiff and the security interests referenced in this Complaint.

## FACTUAL ALLEGATIONS

**SECURITY AGREEMENT**

23.     In April 2014, Plaintiff purchased a 2011 Chevrolet Malibu (the "Vehicle").

24.     The Vehicle was a "consumer good" under Minn. Stat. § 336.9-102(a)(23) because Plaintiff bought and used the Vehicle for personal, family, or household purposes.

25.     In connection with purchasing the Vehicle, Plaintiff entered into a retail installment contract (the "Agreement").

26.     The Agreement was contemporaneously assigned to CPS.

27.     Under the terms of the Agreement: (a) Plaintiff obtained a loan from CPS to finance the Vehicle; (b) Plaintiff granted CPS a security interest in the Vehicle to secure repayment of the loan; (c) Plaintiff was required to make 72 monthly installment payments in the amount of $422.67; (d) the principal amount of the obligation was $17,960.98; and (e) the credit service charge was $12,471.26.

28.     The Agreement was a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provided for a security interest to CPS.  Therefore, CPS was a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

29.     Because Plaintiff's obligations under the Agreement were incurred for personal, family, or household purposes: (a) Plaintiff was a "consumer" as that term is

4

defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA; (b) Plaintiff was a "consumer debtor" as that term is defined by Minn. Stat. § 336.9-102(a)(22); (c) the Agreement was a "consumer goods transaction" under Minn. Stat. § 336.9-102(a)(24); and (d) Plaintiff's obligation under the Agreement was a "debt" as defined by 15 U.S.C. § 1692a(5).

30.    Throughout the course of the Agreement, Plaintiff made numerous, late, partial, and/or irregular payments to CPS.

31.    CPS always accepted Plaintiff's late payments.

32.    When a secured party has repeatedly accepted late payments from the debtor over the course of a loan, the secured party must notify the debtor that strict compliance with the contract terms will be required before the secured party can lawfully enforce its contract remedies for late payments.  *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 236-37 (Minn. 1980). The notice is referred to as a "Cobb notice." *See Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

33.    The secured party must notify the debtor that: (a) strict compliance with the time for payment will be required in the future; and (b) late payments will no longer be accepted. *See Cobb*, 295 N.W.2d at 236.

34.    After accepting the late payments, CPS never sent Plaintiff any Cobb notice, strict compliance notice, notice that future late payments will not be accepted, or notice warning Plaintiff that the Vehicle may be repossessed.

35.    Plaintiffs never received any Cobb notice, strict compliance notice, late payment notice, nor any notice mentioning repossession.

36.     Throughout the course of the Agreement, CPS allowed Plaintiff to fall behind on the monthly payments and remain behind without requiring strict compliance with the terms of the Agreement.

**DEFENDANTS' UNLAWFUL REPOSSESSION**

37.     Sometime prior to July 2, 2020, CPS hired, engaged, or sought the assistance of American Recovery to acquire Plaintiff's Vehicle through repossession.

38.     Thereafter, American Recovery hired, engaged, or sought the assistance of NRB to perform the actual repossession on behalf American Recovery and/or CPS.

39.     On or around July 2, 2020, CPS, American Recovery, or NRB informed the police that it would be repossessing Plaintiff's Vehicle and that Defendants were lawfully able to possess Plaintiff's Vehicle.

40.     At all relevant times, Plaintiff resided at Barcelona Apartment complex.

41.     Barcelona Apartments is a controlled environment and unaccompanied visitors are not allowed.  Barcelona Apartments also prohibits loitering.

42.     At Barcelona Apartments, Plaintiff had a personal parking space in a secured and locked garage. The garage was only accessible with an electronic garage door opener or a key, which the apartment issued to Plaintiff and other residents.

43.     Barcelona Apartments limited access to the garage solely Plaintiff, other residents in the garage, and apartment personnel. Such access was granted as part of the monthly rent, which Plaintiff paid to Barcelona Apartments.

44.     On or around July 2, 2020, Plaintiff's Vehicle was located in her personal parking space inside the apartment garage, which was secured, locked, and could only be

accessed using a key or a garage door opener.

45.     On or around July 2, 2020, NRB gained unauthorized access to the garage by breaking into the garage through forcible entry.   Alternatively, NRB gained unauthorized access to the garage by breaking into the garage through trickery, deceit, misrepresentations, lies, and fraud.

46.     Defendants never had authorization to enter the Barcelona Apartments garage.

47.     Defendants never had authorization to bring a tow truck in the Barcelona Apartments garage.

48.     On or around July 2, 2020, NRB repossessed Plaintiff's Vehicle at the request of American Recovery and/or CPS.

49.     NRB breached the peace during the repossession because NRB unlawfully trespassed onto private, secured, and locked property.

50.     NRB breached the peace during the repossession because NRB gained unauthorized access to the garage by breaking and entering into the garage through forcible entry; or alternatively through trickery, deceit, misrepresentations, lies, and fraud.

51.     NRB's actions on July 2, 2020, as described above, were taken on behalf of CPS and/or American Recovery.

52.     After the repossession, Plaintiff contacted Defendants regarding the details of the repossession, amounts due, and how to get the Vehicle back.  CPS provided Plaintiff with the phone number to American Recovery.  Likewise, American Recovery directed Plaintiff to NRB.

53.     Plaintiff was bounced around between the three Defendants.

54.     Plaintiff informed Defendants that the repossession of her Vehicle was wrongful and illegal, and demanded that Defendants release the Vehicle.

55.     Defendants refused to release the Vehicle absent payment of money.

56.     Plaintiff makes payments to CPS through its website via debit card.

57.     CPS allows customers to pay by check, debit card, credit card, and cash at certain locations.

58.     There is nothing in the Agreement that prohibits Plaintiff from paying via debit card.

59.     To release Plaintiff's car, CPS demanded that Plaintiff make payment via certified funds or money order. CPS refused to allow Plaintiff through her debit card.

60.     As a result of CPS' demand, Plaintiff was forced to pay additional money just to be able to make a payment to CPS.

61.     As a result of CPS' demand for a money order, Plaintiff was delayed from paying CPS. The added delay caused Plaintiff to be without her Vehicle for additional time.

62.     CPS' conduct violated Minn. Stat. §336.9-610 because it is not commercially reasonable to demand payment by money order for an additional when it is not allowed by contract and when CPS always accepted payment via other means.

63.      only and refuse to provide the wire information; (g

64.     Plaintiff was shocked and surprised by Defendants' conduct because CPS had always accepted late payments from Plaintiff.

65.     CPS accepted late payments from Plaintiff even though Plaintiff was

multiple months past due.

66.     Defendants illegally and wrongfully repossessed Plaintiff's Vehicle.

67.     At all times, American Recovery was acting as an agent for CPS, acting on CPS's behalf, and acting at CPS's request and instruction.

68.     American Recovery represented to Plaintiff and to third parties that it was acting on behalf of CPS.

69.     At all times, NRB was acting as an agent for CPS and/or American Recovery, acting on behalf of CPS and/or American Recovery, and acting at the request and instruction of CPS and/or American Recovery.

70.     NRB represented to Plaintiff and to third parties that it was acting on behalf of CPS and American Recovery.

71.     Defendants knew or reasonably should have known that each of the Defendants had been sued in the past for wrongful repossession and violations of the FDCPA.

72.     Defendants' actions were ratified and/or authorized because: (a) any Defendant could have released the Vehicle; (b) Defendants refused to release the Vehicle; (c) Defendants refused to return the Vehicle to Plaintiff without the payment of money; (d) CPS accepted and retained the Vehicle from NRB and American Recovery after repossession; (e) American Recovery accepted and retained the Vehicle from NRB after repossession; (f) Defendants could have prevented the repossession by performing even a cursory review of the data, as opposed to simply relying on inaccurate electronic data; and (g) Defendants allowed the Vehicle to be taken through breach of the peace.

**DAMAGE, HARM, AND INJURIES**

73.    Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendants' unlawful and wrongful repossession.

74.    Since the repossession CPS has been reporting the repossession to credit reporting agencies (commonly referred to as "credit bureaus").

75.    Vehicle repossessions are considered derogatory marks on a consumer's credit file and can have serious negative impacts on consumer's credit score.  *See* Experian, *How Does Repossession Work?*, https://www.experian.com/blogs/ask-experian/how-does-repossession-work/ (Feb. 7, 2021, 3:30 pm).  In fact, "on its own a repossession can cause your [credit] score to *plummet*".  *Id* (emphasis added).

76.    "An auto repossession can negatively affect your credit in numerous ways.  It also can be costly and disruptive—with effects that may linger for years to come." *See* Experian, *How      Does      a      Repossession      Affect      Your      Credit?*, https://www.experian.com/blogs/ask-experian/how-does-a-repossession-affect-your-credit/ (Feb. 7, 2021, 3:40 pm). "Damage to your credit can make it more difficult for you to secure loans and credit going forward." *Id.*

77.    CPS' report of the wrongful repossession on Plaintiff's credit report negatively impacted Plaintiff's credit score.  As a result of the credit report, CPS impeded Plaintiff's ability to obtain lower-cost credit, to obtain other loans, to find a job, and to find housing.

78.    Defendants stole and converted Plaintiff's property.

79.    Defendants' conduct interfered with, interrupted, invaded, and deprived Plaintiff of the use, possession, and enjoyment of her personal property, specifically the Vehicle.

80.    Defendants' conduct caused Plaintiff emotional distress, including anger, inconvenience, confusion, embarrassment, fear, annoyance, aggravation, nuisance, anxiety, and agitation.

81.    It was highly offensive, intrusive, and invasive for Defendants to repossess Plaintiff's Vehicle by: (a) gaining unauthorized access to Plaintiff's secured and locked garage; (b) breaking and entering into the garage through trickery, deceit, misrepresentations, lies, and fraud; (c) breaking into the garage through forcible entry; and (d) unlawfully trespassing onto secured and locked property.

82.    Defendants caused an intrusion upon Plaintiff's privacy and seclusion.

83.    All of Plaintiff's above-referenced injuries—both tangible and intangible—are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit, and the United States District Court for the District of Minnesota.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (Defendants American Recovery and NRB)

84.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

85.    American Recovery and NRB used unfair or unconscionable means to enforce a security interest against Plaintiff by taking or threatening to take certain nonjudicial action to effect dispossession of the property belonging to Plaintiff when

American Recovery and NRB had no present right to possession of the property, which they claimed as collateral through an enforceable security interest.

86.     Specifically, American Recovery and NRB engaged in a self-help repossession of the Vehicle belonging to Plaintiff without the present legal right to possess and/or take the Vehicle.

87.     American Recovery and NRB did not have the legal right to possess the Vehicle because CPS failed to send Plaintiff the proper notice prior to repossession.

88.     American Recovery and NRB did not have the legal right to possess the Vehicle because American Recovery and NRB obtained the Vehicle through breach of the peace.

89.     American Recovery's and NRB's conduct violated 15 U.S.C. § 1692f(6).

90.     As a result of American Recovery's and NRB's violations of the FDCPA, Plaintiff is entitled to actual damages, statutory damages up to $1,000.00, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(1)-(3).

### COUNT II
### VIOLATIONS OF MINN. STAT. § 336.9-609
### UNLAWFUL REPOSSESSION
### (All Defendants)

91.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

92.     CPS failed to send Plaintiff the proper notice after CPS had repeatedly accepted late payments from Plaintiff.  As a result, Defendants had no present right to possess Plaintiff's Vehicle.

93.     Therefore, Defendants' self-help repossession of Plaintiff's Vehicle was

conducted without compliance with Minnesota law (*i.e., in violation of Minn. Stat. § 336.9-609*).

94.     As a result of Defendants' violations of Minn. Stat. § 336.9-609, and pursuant to Minn. Stat. § 336.9-625, Plaintiff is entitled to actual damages and statutory damages in the amount of the credit service charge under the agreement plus ten percent (10%) of the principal amount of the obligation under the loan agreement.

## COUNT III
## VIOLATIONS OF MINN. STAT. § 336.9-609
## BREACH OF THE PEACE
## (All Defendants)

95.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

96.     NRB, acting in its capacity on behalf of CPS and/or American Recovery, breached the peace in violation of Minn. Stat. § 336.9-609 by:

    a.  gaining unauthorized access to Plaintiff's secured and locked garage;

    b.  breaking and entering into the garage through trickery, deceit, misrepresentations, lies, and fraud; or alternatively, by breaking into the garage through forcible entry; and

    c.  unlawfully trespassing onto secured and locked property.

97.     Defendants' conduct violated Minn. Stat. § 336.9-609.  *See Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W. 2d 81, 86 (Minn. App. 1985) (breaking and entering debtor's property to repossess collateral constituted a breach of the peace); *Thompson v. First State Bank of Fertile*, 709 N.W. 2d 307, 311 (2006) (holding that entering a closed building or a closed gate to repossess collateral can be a breach of the peace).

13

98.     The duty to conduct self-help repossessions without breaching the peace is a nondelegable obligation of creditors under Minnesota law.  Therefore, CPS is liable to Plaintiff to the full extent of the liability of American Recovery's and NRB's breach of the peace.

99.     As a result of Defendants' violations of Minn. Stat. § 336.9-609, and pursuant to Minn. Stat. § 336.9-625, Plaintiff is entitled to actual damages and statutory damages in the amount of the credit service charge under the Agreement plus ten percent (10%) of the principal amount of the obligation under the loan Agreement.

100.    As a direct and proximate result of Defendants' breach of the peace, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT IV**
**CONVERSION**
**(All Defendants)**

101.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

102.    At all relevant times, Plaintiff was entitled to the exclusive use, possession, and enjoyment of her Vehicle.

103.    At the time of repossession, Defendants did not have the present right to use, take possession of, or move the property belonging to Plaintiff—in this case, her Vehicle.

104.    By unlawfully repossessing the Vehicle, Defendants:

   a. Intentionally deprived, invaded, and interfered with the use, possession, and enjoyment of property belonging to Plaintiff, without a claim of right;

   b. Took control and possession of the Vehicle without Plaintiff's consent;

   c. Deprived Plaintiff of the use of her Vehicle; and

    d.   Substantially intermeddled with property belonging to the Plaintiff, without a claim of right.

105.   Defendants converted property belonging to Plaintiff for their own use and benefit by unlawfully repossessing the Vehicle.

106.   Defendants' conduct was done intentionally, unreasonably and without justification.

107.   As a direct and proximate result of Defendants' conversion, Plaintiff has been deprived of the use and possession of her Vehicle and damaged in an amount to be determined at trial.

## COUNT V
## INVASION OF PRIVACY
### (All Defendants)

108.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

109.   Congress explicitly recognized a person's right to privacy in financial and collection matters in passing the FDCPA and the Gramm-Leach Bliley Act. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute . . . to invasions of individual privacy."); *see also* 15 U.S.C. § 6801(a).

110.   Defendants intentionally and/or negligently interfered with the solitude, seclusion, and/or private concerns or affairs of Plaintiff by: (a) breaking into Plaintiff's secured, and locked garage; (b) repossessing her Vehicle through breaching the peace, including gaining unauthorized access to Plaintiff's Vehicle; and (c) by informing third parties that Plaintiff's Vehicle could be lawfully repossessed as a result of non-payment.

111.   Plaintiff had a reasonable expectation of privacy in her solitude, seclusion,

private concerns, private affairs, and financial information.

112.   Defendants' above-described conduct resulted in multiple intrusions and invasions of Plaintiff's privacy.

113.   The intrusions and invasions of Plaintiff's privacy occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

114.   Defendants intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting any alleged debt or secured interest, thereby invading, and intruding upon Plaintiff's rights to privacy.

115.   As a result of Defendants' conduct, Defendants invaded Plaintiff's privacy and right to financial privacy.

116.   As a direct and proximate result of Defendants' invasion of privacy, Plaintiff has suffered damages in an amount to be determined at trial.

## **JURY DEMAND**

117.   Plaintiff is entitled to and hereby demands a trial by jury.  *See* U.S. Const. amend. VII; Fed. R. Civ. P. 38.

**WHEREFORE**, Plaintiff Marquitta R. Randle demands a trial by jury and prays for judgment against Defendants CPS, American Recovery, and NRB as follows:

1. Awarding judgment against Defendants in an amount to be determined at trial;

2. Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1)–(3) against American Recovery and NRB;

3. Awarding Plaintiff actual damages and statutory damages under Minn. Stat. § 336.9-625 against Defendants;

4. Awarding Plaintiff damages against Defendants caused by Defendants' conversion of Plaintiff's property;

5. Awarding Plaintiff damages against Defendants caused by Defendants' invasion of privacy;

6. Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

7. Awarding Plaintiff such other and further relief as the Court deems proper, just, and equitable.

<div style="margin-left: 50%;">

**TARSHISH CODY, PLC**

</div>

Dated:  June 29, 2021          By:   *s/ Adam R. Strauss*
Adam R. Strauss (#0390942)
ars@attorneysinmn.com
Benjamin W. Tarshish (#0392691)
btarshish@attorneysinmn.com
6337 Penn Avenue South
Minneapolis, Minnesota 55423
Telephone: (952) 361-5556
Facsimile: (952) 361-5559
**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746 and Minn. Stat. § 358.116, Plaintiff Marquitta R. Randle verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendant, or create a needless increase in the cost of litigation to any Defendant, named in the Complaint.
5. I have filed this Complaint in good faith and solely for the purposes set forth in it.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**EXECUTED ON**   _6_   _30_ , _2021_
                  **Month**   **Day**   **Year**

**Marquitta R. Randle**